**SCHULTZ et al. v. UNITED STATES et al.**

**Civil Action No. 590.**

District Court, W. D. Wisconsin.

Feb. 9, 1945.

Glenn W. Stephens, A. E. Kilmer, and R. M. Rieser, all of Madison, Wis., for plaintiffs.

Wendell Berge, Asst. Atty. Gen., and Robert L. Pierce and Edward Dumbauld, Sp. Assts. to the Atty. Gen., and Charles H. Cashin, U. S. Atty., of Madison, Wis., for defendant United States.

Daniel W. Knowlton, Chief Counsel, and Daniel H. Kunkel, both of Washington, D. C., for defendant Interstate Commerce Commission.

Amasa Wheeler and Herbert M. Burns, both of Duluth, Minn., for interveners Moland Bros. Trucking Co., a partnership consisting of Howard Moland, Clarence Moland, Lothard Moland and H. T. Moland.

Before EVANS, Circuit Judge, and STONE and DUFFY, District Judges.

PER CURIAM.

This is an action to set aside an order of the Interstate Commerce Commission dated September 7, 1943, in a proceeding reported in 39 M.C.C.321, wherein the Commission approved and authorized the purchase by Moland Brothers Trucking Company (hereinafter called "Moland") of certain operating rights and property of Flambeau Freight Lines (hereinafter called "Flambeau"). Such authorization and approval by the Commission is required under Sec. 5 of the Interstate Commerce Act, 49 U.S.C.A. § 5. This action is brought by other motor carriers who appeared as protestants in the proceedings before the Commission.

On October 30, 1942, Division 4 of the Commission, with three commissioners sitting, found in a two to one decision that the proposed transfer was not consistent with the public interest. 38 M.C.C.625. Commissioner Mahaffie concurred solely on the ground that Moland's financial condition was such that the consummation of the proposed purchase would impair Moland's ability to perform its duties adequately as a common carrier. However, Commissioner Mahaffie stated:

"I doubt if the disadvantage to competitors that would result from improved through service outweighs the benefit to the shipping public of such improved service."

A hearing was held on May 19, 1943, before an examiner and proof was given as to the improved financial condition of Moland. This was due in some part to the profits accruing to Moland by operating Flambeau under a temporary authority. Before the examiner's report was made, a petition was filed under the Commission's Rule 102, and upon consideration the entire commission decided, with four commissioners dissenting, that the proposed transfer was consistent with the public interest. An order was entered approving the transfer and that order is the subject of this controversy.

Sec. 5(2) (b) of the Interstate Commerce Act provides:

"* * * If the Commission finds that, * * * the proposed transaction * * * will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, * * *."

Sec. 5(2) (c) provides:

"In passing upon any proposed transaction under the provisions of this paragraph (2), the Commission shall give weight to the following considerations, among others: (1) The effect of the proposed transaction upon adequate transportation service to the public; (2) the effect upon the public interest of the inclusion, or failure to include, other railroads in the territory involved in the proposed transaction; (3)

the total fixed charges resulting from the proposed transaction; and (4) the interest of the carrier employees affected."

The testimony before the Commission disclosed that Moland operates as a motor vehicle common carrier between Chicago, Illinois, and Duluth, Minnesota, principally over three regular routes, all extending through the State of Wisconsin. Flambeau operates as a motor vehicle common carrier between Duluth and Minneapolis and St. Paul (hereinafter called "Twin Cities") via Ashland and Eau Claire, as well as serving certain intermediate points. Between Abbotsford and Ashland and for a stretch north of Ashland, Moland and Flambeau operate on the same highway and duplicate each other's service. At times freight from Chicago or Milwaukee destined for the Twin Cities would be transferred from Moland to Flambeau at Eau Claire, but this happened very rarely. After the consolidation Moland would be enabled to give a through service from Chicago-Milwaukee to the Twin Cities.

Plaintiffs herein contend that in its decision the Commission adopted the findings of its Division 4 and that, therefore, evidence was lacking to support the Commission's conclusion that the proposed transfer would be in the public interest. An examination of the Commission's decision discloses the following statements:

" * * * The prior report of division 4 adequately states the issues. * * * The issues involved are clearly stated in the prior report, and a further hearing has been held in respect of those issues. * * * The facts involved, having been adequately set forth in the prior report, will be re-stated herein only to the extent necessary to clarity of understanding and as developed at the further hearing."

The Commission's decision then states the contention of the protestants and comments upon the financial improvement of Moland. A reference is then made to the Commission's earlier decision in Standard Freight Lines, Inc.—Lease—Holt, 38 M.C.C. 483, wherein the lessee was authorized to lease rights of lessor between LaCrosse and Twin Cities, permitting a direct through service between Chicago and the Twin Cities, and the decision points out that the transaction was opposed by numerous motor carriers, including most of the protestants in the case at bar. After quoting from the Standard decision, the commission holds:

"The routes here under consideration would afford vendees an opportunity to perform, following the unification, a through service between the same two principal terminal points. *The evidence presented by protestants in the instant case as to the anticipated effect upon them and on their service, and on the general competitive situation, in our opinion, does not warrant a conclusion different from that in the Standard case. * * *"* (Italics supplied.)

The majority opinion concludes:

"On further hearing, we find that purchase by * * * (Moland), of the previously described operating rights and property of * * * (Flambeau), upon the terms and conditions set forth above and in the prior report, which terms and conditions are found to be just and reasonable, is a transaction within the scope of section 5(2) (a), and will be consistent with the public interest * * *."

The order which was entered contained the following:

"Further investigation of the matters and things involved in this proceeding having been made, and the Commission, on the date hereof, having made and filed a report on further hearing containing its findings of fact and conclusions thereon, which report and the prior report of October 30, 1942, 38 M.C.C.625, are made a part hereof * * *."

It is thus apparent that the Commission intended that its decision from which quotations have heretofore been made did in effect also constitute its findings of fact and conclusions of law. However, the references to the prior decision of Division 4 as well as to its decision in the Standard case makes for confusion. Division 4 confirmed the report of Examiner Smith, which showed extensive carrier service between Eau Claire and the Twin Cities, and which found that after the unification Moland would operate a single line through service which would be a new service. Division 4 also found that numerous substantial operators afford service between the Twin Cities and Eau Claire and thence to Milwaukee and Chicago, and that the movements of traffic between said points is becoming increasingly unbalanced, the heavier movements being westbound out of Chicago, necessitating expensive and wasteful backhauling of empty equipment. The division also found that further loss of eastbound traffic will necessitate a cur-

tailment of service now maintained, and that all of the carriers in the territory are retrenching.

■ It is unfortunate that the Commission did not make specific findings upon which it based its conclusions. However, it is not our function to determine the matter as though this were a trial de novo. In testing the validity of the Commission's order we must keep in mind the limited scope of the court's review. The principle has been well established that orders of the Interstate Commerce Commission should not be set aside by a court if they are within the Commission's statutory powers and are supported by substantial evidence. Chicago, St. Paul, Minneapolis & Omaha R. Co. v. United States, 322 U.S. 1, 3, 64 S.Ct. 842; United States v. Wabash R. Co., 321 U.S. 403, 408, 64 S.Ct. 752; United States v. Carolina Freight Carriers Corporation, 315 U.S. 475, 482, 62 S.Ct. 722, 86 L.Ed. 971; Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308. The Supreme Court has also stated the rule in Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, at pages 286, 287, 54 S.Ct. 692, at page 694, 78 L.Ed. 1260, as follows:

" * * * The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. * * *"

■■ In McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, the Supreme Court upheld the Commission's order authorizing the merger of a number of the principal motor carriers operating along the eastern seaboard. This merger had been opposed by the Anti-Trust Division of the Department of Justice, by the Secretary of Agriculture, and by a number of organizations which were engaged in shipping. The court said, 321 U.S. at pages 87, 88, 64 S.Ct. at page 381:

"In short, the Commission must estimate the scope and appraise the effects of the curtailment of competition which will result from the proposed consolidation and consider them along with the advantages of improved service, safer operation, lower costs, etc., to determine whether the consolidation will assist in effectuating the over-all transportation policy. Resolving these considerations is a complex task which requires extensive facilities, expert judgment and considerable knowledge of the transportation industry. Congress left that task to the Commission * * *. 'The

wisdom and experience of that commission,' not of the courts, must determine whether the proposed consolidation is 'consistent with the public interest.' (Citing cases.) If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order."

■ We have examined the evidence taken before the Commission and conclude that it is sufficiently substantial to support the findings. The only close question is whether the findings themselves are adequate. We have concluded that they are, and that this action must therefore be dismissed.