## C. & D. MOTOR DELIVERY CO. v. UNITED STATES.

## CINCINNATI TERMINAL WAREHOUSES, Inc., v. SAME.

### Nos. 9912, 9913.

Circuit Court of Appeals, Sixth Circuit.

July 2, 1945.

Herbert Baker, of Columbus, Ohio, for appellant C. & D. Motor Delivery Co.

John H. Clippinger, of Cincinnati, Ohio (John H. Clippinger and John W. Hudson, both of Cincinnati, Ohio, on the brief), for appellant Cincinnati Terminal Warehouses, Inc.

Hugh E. Lillie, of Washington, D. C. (Byron B. Harlan and Robert E. Marshall, both of Cincinnati, Ohio, and Hugh E. Lillie, of Washington, D. C., on the brief), for the United States.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

These causes were heard together and one opinion will suffice.

The District Attorney filed informations severally against Cincinnati Terminal Warehouses, Inc. (herein called Warehouses) and against C. & D. Motor Delivery Company (herein called Delivery Co.). The information against Warehouses contained 20 counts. Each count detailed separate transactions in which Warehouses was charged with soliciting, accepting and receiving rebates from Delivery Co. in violation of Title 49 U.S.C.A. § 322(c), to wit:

"Sec. 322(c) Participation in unjust discrimination; evasion of regulations; penalty.

"Any person, whether carrier, shipper, consignee, or broker, or any officer, employee, agent, or representative thereof, who shall knowingly offer, grant, or give, or solicit, accept, or receive any rebate, concession, or discrimination in violation of any provision of this chapter * * * or who shall knowingly and willfully by any such means or otherwise fraudulently seek to evade or defeat regulation as in this chapter provided for motor carrier or brokers shall be deemed guilty of a misdemeanor and upon conviction thereof be fined not more than $500 for the first offense and not more than ·$2,000 for any subsequent offense."

The "provision of this chapter" here relevant is found in Title 49, Sec. 317(b), forbidding deviation from tariff rates and undue preferences.

After a demurrer to the information was overruled, Warehouses entered a plea of not guilty to all counts.

The information against Delivery Co. contained 30 counts and after a demurrer thereto was overruled, it pleaded guilty to counts 13, 14, 15, 17, 18, 19, 21, 22, 23 and 25 and not guilty as to the remainder. The remaining 20 counts set forth the same transactions described in the 20 counts against Warehouses and charged Delivery Co. with offering, granting, and giving a rebate to Warehouses in violation of Title 49 U.S.C.A. § 322(c).

The alleged violations charged against the two appellants represented complementary aspects of the same transactions. The cases were tried by the court without the intervention of a jury upon substantially identical stipulations as to the facts and after a motion for a directed verdict in each case each defendant was found guilty on each count and a fine of $25.00 was assessed against each. We limit our detailed consideration to the case against Warehouses.

No. 9913. Count I, similar to the other 19 except as to the shipper, commodity, date of shipment and amount of the allowances made by the Delivery Co. to Warehouses, is typical. It charges that defendant for compensation delivered to the Delivery Co., a common carrier by motor vehicle for transportation, and that the Delivery Co. transported on public highways from Cincinnati, Ohio to Louisville, Ky., "for defendant as representative of the Solvay Sales Corp.," 10 barrels of sodium nitrite, weighing 4510 pounds, "consigned by defendant as representative of Solvay Sales Corp., the owner of such property, to Kentucky Color & Chemical Company, that for such transportation defendant, as representative of Solvay Sales Corp., paid to said common carrier the lawful charge and compensation of, to wit, $21.65 specified in the tariffs of said common carrier filed with the Interstate Commerce Commission and in effect at the time of said transportation; that on * * * August 1, 1941, at Cincinnati * * * said common carrier did pay to defendant and defendant did knowingly accept and receive $2.26 as an allowance for *assembling and loading services*" (italics ours) "performed by defendant in connection with such transportation"; that in the tariffs, the carrier undertook to perform

the service of loading the shipment described, but that the tariffs did not provide for the payment out of said rate "of any allowance or any amount whatsoever for any assembling or loading service connected with such transportation, or for the furnishing by any one other than the said common carrier of any instrumentality for assembling or loading such shipment therein, whereby defendant then and there unlawfully did knowingly solicit, accept, and receive a rebate from said common carrier."

It was stipulated that the court might consider the following facts as proved:

"I. The facts stated in the amended information.

"II. That the 'assembling' alleged in each count consisted of *defendant's concentration of the shipment* described in each count of such information along with other shipments for the C. & D. Motor Delivery Company *from various doors* of the thirty delivery doors of the defendant, all directly accessible to the trucks of the C. & D. Motor Delivery Company, *at one such door directly accessible to such carrier's trucks.*" (Italics ours.)

"III. The C. & D. Motor Delivery Company's relevant tariff provided as follows:

"Pick-Up and Delivery Service

"(a) Unless otherwise provided in this tariff, the rates provided in this tariff include *one pick-up* from shipping department directly accessible to trucks at the consignor's warehouse * * *, and one delivery to consignee's receiving department, directly accessible to trucks at the consignee's warehouse, factory, store, place of business or residence.

"(b) *No accessorial services such as inside collection or delivery, delivery* or removal to or from basement or upper floors, * * * will be performed at rates provided in this tariff and such service cannot be rendered by carriers parties to this tariff unless specific provisions therefor is provided in tariffs, lawfully in effect and on file with the Interstate Commerce Commission." (Italics ours.)

The record does not indicate that the information copied therein is the "amended information" referred to in the stipulation but we assume that it is.

According to the relevant tariff, the rates of the Delivery Co. included "one pick-up from shipping department directly accessible to trucks at the consignor's." This means one loading and this the Delivery Co. was obligated to do under the tariff. We are not called upon to consider whether the Delivery Co. might have employed appellant Warehouses to load its trucks because the facts involve more than that question.

The information in each count charges and the fact is, that Warehouses accepted and received an allowance of $2.26 for "assembling" as well as loading services. The assembling consisted in the concentration by Warehouses of the shipment from its 30 various and accessible delivery doors at one door directly accessible to the carrier's trucks. Paragraph (b) of the Delivery Co.'s tariff expressly states that "no accessorial services such as inside collection * * * will be performed at rates provided in this tariff and such services cannot be rendered by carriers parties to this tariff * * *."

The language is explicit. "Inside collection" service was another phrase for "assembling" or "concentration" service, and whether under one name or the other the Delivery Co. was prohibited by the tariff from performing such service and the court was fully justified in concluding that when Warehouses, as a representative of the shipper, received payment for such services from the Delivery Co. the receipt was clearly a "concession" "received" within the meaning of Sec. 322(c).

The evil of such practice is obvious. As long as the Delivery Co. paid Warehouses as the representative of the shipper for services which were not included in transportation services regulated by the tariff, Warehouses would naturally select the Delivery Co. over other carriers. See Baltimore & O. R. Co. v. United States, 305 U. S. 507, 59 S.Ct. 284, 83 L.Ed. 318; United States v. Wabash R. Co., 321 U.S. 403, 411, 64 S.Ct 752, 88 L.Ed. 827.

The denial of the motion for a directed verdict was right.

No. 9912. The statute [Sec. 322(c) of Title 49] forbids the offering or granting or giving of a rebate or concession by a carrier. We have affirmed the denial of the motion for a directed verdict made by Warehouses and it necessarily follows that the motion made by the Delivery Co. for a direct verdict must also have been denied, for the evidence shows, that in offering

and granting the identical concessions received by Warehouses, the Delivery Co. has also violated the statute.

There is no merit in the contention made in each case that the court erred in overruling the motion for a new trial. This matter is not open to review except to determine whether the court abused its discretion in denying the motion and no such situation is presented. It is urged in the briefs under the headings "Questions involved" that the court erred in overruling the demurrers. We treat this contention as having been abandoned, (1) because it was not followed up in the brief or the argument [Rule 21 of this court; Kahn v. United States, 6 Cir., 20 F.2d 782]; and (2) because in the briefs of each appellant it is stated in substance that the only question presented is, whether the facts alleged in the information and contained in the stipulation constituted a violation of Title 49 U.S.C. § 322(c).

Affirmed.