**CORN PRODUCTS REFINING CO. v.
UNITED STATES et al.**

No. 46 C 1604.

District Court, N. D. Illinois, E. D.

Feb. 6, 1947.

Pope & Ballard, of Chicago, Ill., and Lord, Day, & Lord, of New York City, for plaintiff.

Edward J. Hickey, Jr., Sp. Asst. to Atty. Gen., for the United States.

Allen Crenshaw, Interstate Commerce Commission, of Washington, D. C., for I. C. C.

Before KERNER, Circuit Judge, CAMP-BELL and LA BUY, District Judges.

CAMPBELL, District Judge.

The plaintiff has filed a motion to set aside the court's findings of fact, conclusions of law, and decree entered in this cause on December 5, 1946, and to grant the plaintiff a new trial.

This action was brought to enjoin the enforcement of an order of the Interstate Commerce Commission which defined and limited the point at which the carriers' transportation duty ended and beyond which the carriers could not move cars in making deliveries at plaintiff's plant at Argo, Illinois, unless they made a charge in addition to the line-haul rate. The plaintiff argued that it was denied a proper hearing because the Commission excluded certain proffered evidence. That evidence pertained to practices of carriers generally throughout the country and in the Chicago area, in making deliveries of cars in similar and other industries, and was excluded by the Commission on the ground that in this type of proceeding comparisons with other situations are irrelevant. This offer of evidence was the result of plaintiff's apparent misconception of the Commission's duty and of the rules applicable in this type of proceeding.

In Ex parte 104, 209 I.C.C. 11 (1935), the Commission made an extensive investigation of the service rendered by interstate railroads in spotting cars at points upon the systems of plant trackage maintained by large industries. It decided that, in determining the point at which the carriers' transportation duty ends, the standard to be applied is whether the movement from the interchange tracks to points of loading and unloading is a plant service for the convenience of the industry, or is a part of the carrier service comparable to the usual car delivery at a team track or siding. In applying this standard in particular cases, the Commission determined that when a carrier is prevented from performing an uninterrupted service to the points of loading or unloading within the confines of an industrial plant because of some action or disability of the industry or its plant, the carrier's duty with respect to the delivery or receipt of cars does not extend beyond the point of interruption or interference; and that where delivery and receipt of freight is effected by carriers on interchange tracks because of interruption or interference with the work of the carrier and the industry which would be encountered beyond such tracks, delivery or receipt on such tracks constitutes delivery or receipt under the line-haul rates.

Plaintiff's counsel has stated his conception of the Commission's test in determining whether or not the service within a plant is included within the line-haul rates to be "whether the service is, in the first place, customary, * * * whether it is reasonable and whether it is in excess of what the Commission has called simple switching or team track delivery". (Plaintiff's Brief in Support of Petition for Permanent Injunction, p. 95.) On the basis of this belief that evidence of the customary practices of carriers in making delivery of cars to industrial plants is relevant in determining the

extent of their legal duty to deliver at a particular plant, plaintiff sought to introduce before the Commission the aforesaid evidence, which was rejected by the Commission as irrelevant.

A review of the authorities will make plaintiff's misconception apparent.

On page 6 of the Plaintiff's Brief above mentioned appears a quotation from the original report in Ex parte 104 (209 I.C.C. 11, 18): "We come then to the test, which vague as it is, is the only safe one, that is, whether in the light of all the circumstances such a form of delivery is customary or reasonable." The Commission continued, in the following sentence which the plaintiff did not quote: "That it is not customary is established, we think, by uncontroverted evidence." At this point in its report the Commission was considering the insistence of many industries that the carriers haul cars beyond the interchange tracks, which correspond to ordinary spurs or sidings, over an intricate system of plant trackage and distribute the cars among the mills and warehouses in order to meet the industrial needs of the plant. The Commission was thus considering the same demand which the plaintiff made in this proceeding, and determined, on the basis of a nation-wide review of carriers' practices, that such delivery was not customary.

In United States v. American Sheet & Tin Plate Co., 1937, 301 U.S. 402, 57 S. Ct. 804, 81 L.Ed. 1186, the Supreme Court reviewed the record before the Commission in Ex parte 104. The Court declared, with reference to the performance by carriers of spotting service on plant trackage as part of the carrier's customary duty under the line-haul rate: "The record fails to establish any such custom." 301 U.S. 402, 410, 57 S.Ct. 804, 808, 81 L.Ed. 1186, cited in Plaintiff's Brief in Support of Petition for Permanent Injunction, p. 43. The plaintiff assumes that this statement is a negative finding by the Court that there was a lack of evidence in the record concerning the customary performance by carriers of spotting services without additional charge, and therefore argues that its offer of such evidence should have been accepted to show the existence of such custom. But the Court went on, in the Tin Plate case, to discuss the Commission's record and indicated that the record showed positively the lack of a nation-wide custom with reference to spotting cars on plant trackage, and said, 301 U.S. at page 410, 57 S.Ct. at page 808, 81 L.Ed. 1186: "There is no custom or practice which has the force of a rule of law that the line-haul rate includes plant spotting service."

In United States v. Wabash Railroad Co., 1944, 321 U.S. 403, 64 S.Ct. 752, 756, 88 L.Ed 827, the type of evidence excluded here was admitted by the Commission, and was relied on by the District Court in setting aside the Commission's order on the ground that there was lack of evidence to support the Commission's finding of a "preferential service not accorded to shippers generally" and that the order discriminated against the plant. The Supreme Court, stating that this was a mistaken interpretation of the Commission's findings and misapprehended their legal effect, said, 321 U.S. at page 412, 64 S.Ct. at page 756, 88 L.Ed. 827: "If the commission's reference, in its conclusion of law, to 'a preferential service not accorded to shippers generally' means more than the statement in the fifth finding of fact that the service is 'in excess of those rendered shippers generally in the receipt and delivery of traffic at team tracks', it is obviously irrelevant to the present proceeding * * *. But a reading of the Commission's report and findings makes abundantly clear that it was not concerned with discriminations or preferences between the Staley plant and others, such as are prohibited by §§ 2 and 3(1); that the 'preference' to which it referred was not based upon a comparison of conditions at the Staley plant with those of others, but upon an application to the actual conditions at the Staley plant of the standards laid down in its report in Ex parte 104, in order to ascertain whether the service rendered there is in excess of that which the carriers are obliged to perform by their tariffs."

Thus evidence of comparison with other plants was used in the Staley case to attack the Commission's order in the District Court on the ground that it discriminated against Staley. But the Supreme Court indicated that a Commission order on the

subject of spotting services by carriers, intended to prohibit the granting of preferences or rebates by carriers either by their performance of spotting services under the line-haul rate or by paying an allowance to plants performing their own spotting, could not be attacked on the ground of discrimination against the particular plant under investigation, because the situation at each plant must be judged by the particular conditions found to exist there. And if it could be said that precisely the same conditions exist at two plants, the fact that the Commission has acted with reference to one of them is not a discrimination against it, but shows the necessity of further action by the Commission to suppress unlawful practices elsewhere. 321 U.S. 403, 412, 413, 64 S.Ct. 752, 756, 88 L.Ed. 827.

■ It thus appears that even if plaintiff's proffered evidence of practices at other plants and in other switching areas had been admitted by the Commission, the order of the Commission would nonetheless have to be upheld as a result of its study of the actual conditions prevailing at the Corn Products plant, because the Commission's duty is to apply the standards laid down in its original report in Ex parte 104 to the facts found to exist at any particular plant. If plaintiff's proffered evidence was intended to show what services were accorded to shippers generally, it was clearly irrelevant because, as the Supreme Court said in the quotation given above from the Staley case, the standard of comparison is not the extent of spotting services given by carriers at other plants, which may merely represent other instances of unlawful rebates or preferences, but is the extent of services "rendered shippers generally in the receipt and delivery of traffic at team tracks". Traditionally delivery at team tracks or sidings has been regarded as part of the carrier's transportation duty under the line-haul rate, and it is such delivery which was the origin of the practice of spotting. 209 I.C.C. 11, 17, 32. As industrial plants become complex, with hundreds of acres and miles of track inside the plant area, it is a question of fact for the Commission to determine at what point the movement of cars at any particular plant becomes a service for the convenience of the industry, and is not part of the carrier's duty to deliver, equivalent to placement of cars on a simple siding or team track.

■ The other purpose for which plaintiff appears to have intended its proffered evidence was to show that the standards established by the Commission in Ex parte 104 were erroneous because established on the basis of an inadequate investigation of the practice with reference to spotting services. While an administrative agency should not impose rules based on an inadequate investigation of a problem, it should also, in a case of this sort, not be compelled to re-litigate the basic issues in each supplementary proceeding brought to enforce the rules in situations where violations are found to occur. If this were a case of first impression, this court would be inclined to scrutinize the record in the original proceeding and the evidence which the plaintiff wishes to introduce. But because of the fact that the Supreme Court has already reviewed the Commission's report and has approved the standards established therein, this court must hold that the original extensive investigation by the Commission of the problem of spotting services was fair and that the standards determined therein were based upon sufficient evidence, and that the Commission's duty in each supplementary proceeding is merely to apply the aforesaid standards to the traffic conditions found to exist at any particular plant where spotting services are involved.

On the basis of the foregoing considerations, this court entered findings of fact, conclusions of law, and a decree dismissing the petition. Plaintiff's present motion is based upon certain findings and conclusions which refer to the incompleteness of the record before the court. It asks either that it be given an opportunity to introduce the missing parts of the record, if the record is incomplete, or that the findings and conclusions be corrected to state that the complete record is before the court.

The fourth finding of fact states that the Commission had before it the complete record which formed the basis for its original report in Ex parte 104, that this record is not before the court, that the "partial record produced by plaintiff be-

fore this court does not contain the evidence of record as to the practice and custom at these (other) plants", and that "accordingly, the whole of the record on which the Commission acted and made its findings was not produced by plaintiff for consideration by this Court."

■■ The practice and custom at other plants was relevant in the original proceeding when the Commission was attempting to learn if there was a universal custom with reference to spotting services. With the Commission's finding, approved by the Supreme Court, that no such custom existed, evidence of comparative practices became irrelevant in supplementary proceedings. It might be argued that since this proceeding is supplementary to the original proceeding in Ex parte 104, the record herein is, in a sense, "partial", since the court does not have before it the record on which the Commission determined the applicable standards as set forth in its original report. However, even if the record were "complete" in the sense that all the evidence in the original proceeding had been introduced, this court does not have the power to reach a conclusion opposite to that of the Supreme Court in the previously mentioned cases concerning the standards to be applied in determining where the carriers' transportation duty ends. It would therefore have been a futile gesture to have introduced herein the record in the original proceeding. It seems clear that since each supplementary proceeding involves merely the application of the standards established in the original proceeding to the physical facts found at the plant under investigation, and since the standards to be applied have already been determined by the Commission and approved by the Supreme Court, the record in each supplementary proceeding is essentially complete in itself. No other meaning was intended by the fourth finding of fact.

■ The sixth conclusion of law states that the findings of fact made by the Commission in its reports in this case "may not be assailed and must be accepted by the courts in the absence of the entire record upon which they were made." This conclusion is related to the fourth finding and means that since this proceeding is supplemental to the original proceeding in Ex parte 104 and involves an application of the standards determined in the original proceeding, this court cannot review the record in which the standards were determined by the Commission because it is not before the court. But as has already been shown, this court could not review the latter record even if it were before the court because the Supreme Court has already done so. Nothing in this conclusion of law means that the record in the supplemental proceeding involving the plaintiff's plant is incomplete.

The seventh conclusion of law states that the Commission was not required to receive evidence of comparative practices elsewhere either for the purpose of showing discrimination, or practice and custom or extent of service rendered shippers generally, or for any other purpose, because the Supreme Court has already reviewed the record in the original proceeding and has found that there is no custom or practice that the line-haul rate includes plant spotting service. In adopting this conclusion of law, the court agreed with the defendants' interpretation of the Tin Plate case, which has been previously discussed herein, and disagreed with the plaintiff's argument that it is not clear from a reading of the Tin Plate case the extent of the record that the Supreme Court was reviewing in that case.

The findings and conclusions heretofore made in this cause as they are now explained in this memorandum are hereby confirmed. The record heretofore introduced herein by the plaintiff is deemed complete for the purposes of this trial. The plaintiff's motion to set aside the decree, findings and conclusions, and to grant plaintiff a new trial, is therefore denied.