State Milk Control Board,
No. 4907.

PETITION OF ASSOCIATED GROCERS OF NEW HAMPSHIRE, INC.

Argued April 4, 1961.

Decided May 31, 1961.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* (*Mr. Pingree* orally), for the plaintiff.

*Booth, Wadleigh, Langdell, Starr & Peters* (*Mr. Peters* orally), for New Hampshire Milk Distributors Association.

*Gardner C. Turner,* Attorney General, and *Frederic T. Greenhalge,* Assistant Attorney General (*Mr. Greenhalge* orally), for the State.

DUNCAN, J. The Milk Control Board is authorized to regulate and control the production, distribution and sale of milk within the state, to the end that adequate supplies of milk shall be available throughout the state. RSA 183:6. It is also authorized to fix the prices which distributors may pay to producers and the prices which they may charge to consumers and others, in order to assure an adequate supply in a specified market, when the loss of such a supply may be a threat to public health. RSA 183:7.

The term "distributor" is defined as "any person . . . who purchases for sale or sells . . . more than two quarts of milk daily within the state for consumption [or] disposition . . . within the state." RSA 183:2.

The Board is specifically empowered to adopt, promulgate, and enforce reasonable rules and regulations deemed necessary to carry out its authority. RSA 183:13. Effective April 1, 1958, the Board promulgated its regulation V, providing in part as follows: "No commissions, discounts, rebates, price concessions or other payments which reduce the fixed minimum price for milk and cream will be allowed except as listed below and to employees." No exception thereafter listed in the effective regulations purports to sanction the operation or procedure which the plaintiff seeks authority to establish.

The findings made by the Board in this case include the following: "The difference between the cost of milk and allied products purchased as a distributor and the amount charged to individual stores represents a price concession to the individual retail stores to the extent that said retail stores participate by stockholding in such credits to the surplus of Associated Grocers."

The plaintiff does not question the authority of the Board to make reasonable regulations, and asserts that the only issue presented is "whether the payment of dividends to all of its stockholders, in proportion to stock ownership, of the profits made from the sale of milk to some of its stockholders, is a violation of the cited regulation of the Board."

As indicated by other findings by the Board, the plaintiff held a distributor's license for several years without in fact processing or distributing milk, and its present proposal contemplates that it should buy and sell "without in fact acting as a distributor," if the term is here used in the sense of one who delivers milk. The licensing requirements of the statute however are not confined to distributors who in fact transport or deliver milk, but extend to the operation proposed by the plaintiff by which it would buy and sell the milk, but leave the transportation and delivery to other distributors presently engaged in making such deliveries. Under the statute (RSA 183:2), the proposed operation would bring the plaintiff within the definition of the term "distributor," and within the Board's regulations as they apply to prices permitted to be paid and charged by distributors.

The occasion for the plaintiff's proposal arises from the fact that sales between distributors are unregulated as to price. Although the stockholder-retailers are likewise "distributors" within the statutory definition, their purchases of milk for store resale are controlled by the fixed minimum wholesale price established by

regulation of the Board (R. VI(b)). Accordingly the plaintiff anticipates that by rearranging the deliveries made to its stockholders by present distributors, or some of them, so that a single distributor will supply any single stockholder, thereby eliminating duplication of delivery, reductions in the delivery costs of such distributors may be effected, and hence permit the plaintiff to purchase at more advantageous prices.

In the situation presented, it is apparent that to the extent that any dividend, or any increase in the value of the stockholders' equity in the company because of additions to surplus, should be attributable to gain realized from the sale of milk to a particular stockholder, that stockholder would in effect receive a price concession, or "payment [reducing] the fixed minimum price" paid by him for such milk in the first instance, which would stem directly from the price paid by him. The fact that the amount of such a benefit would be in proportion to his interest in the company rather than to the quantity of milk purchased by him does not alter this result. The effect of the payment or credit, regardless of amount, is to reduce the price of milk to the stockholder.

The device proposed is not unlike a rebate or concession producing a departure from the filed tariffs of an interstate carrier in violation of the Elkins Act. 49 U.S.C.A., ss. 41-43; *Union Pacific R. Co.* v. *U. S.*, 313 U. S. 450, 464; *Hocking Valley Ry. Co.* v. *U. S.*, 210 Fed. 735 (6th Cir. 1914). See also, 49 U.S.C.A., s. 2; *B. & O. R. Co.* v. *U. S.*, 305 U. S. 507, 524; *U. S.* v. *Wabash R. Co.*, 321 U. S. 403, 411. *Cf.* RSA 378:21.

Moreover to the extent that either of the suggested benefits to a stockholder would be attributable to the sale of milk to other stockholders, it would operate to reduce the first stockholder's cost of doing business including the cost of milk, and thus indirectly reduce the cost or "price" of milk to him.

The Board's conclusion that the plaintiff's proposal would violate the cited regulation is accordingly upheld, and no occasion arises to consider the validity of other findings made by the Board or the issue of whether the corporate entity of the plaintiff may properly be disregarded for regulatory purposes. See *N. H. Wholesale Beverage Ass'n* v. *Commission*, 100 N. H. 5. *Cf. Petition of White Mountain Power Co.*, 96 N. H. 144.

If the marketing procedure proposed by the plaintiff is economically desirable or thought to present no threat to the control and regulation of the milk business in the state, appropriate legislative

306

exemption of the procedure from the provisions of the act might afford the plaintiff the relief which it seeks. *Cf*. RSA 183:7.

*Appeal dismissed.*

All concurred.