### C. E. HALL & SONS, Inc., et al. v. UNITED STATES et al.

#### Civ. A. No. 8494.

United States District Court  
D. Massachusetts.

Jan. 27, 1950.

LaRue Brown, Boston, Mass., Brown, Field, McCarthy & Field, Boston, Mass., Raymond E. Bernard, Boston, Mass., Francis E. Barrett, Milton, Mass., for plaintiffs.

William J. Hickey, Special Assistant to Attorney General, James E. Kilday, Special Assistant to Attorney General, Herbert A. Bergson, Assistant Attorney General, George F. Garrity, United States Attorney, Boston, Mass., for the United States of America.

Edward M. Reidy, Associate Chief Counsel, Washington, D. C., Daniel W. Knowlton, Chief Counsel, Washington, D. C., Alfred G. Malagodi, Assistant United States Attorney, Boston, Mass., for the Interstate Commerce Commission.

Before MAGRUDER, Circuit Judge, SWEENEY and WYZANSKI, District Judges.

MAGRUDER, Circuit Judge.

On October 7, 1948, the Interstate Commerce Commission, Division 5, upon a finding that the present and future public convenience and necessity so required, issued an order granting an application of Auclair Transportation, Inc., to the extent of authorizing operation by the applicant, in interstate or foreign commerce, as a common carrier by motor vehicle of commodities which because of their size or

weight require the use of special equipment or specialized handling, over irregular routes, between Manchester, N. H., on the one hand, and, on the other, Elizabeth, N. J., and points in Maine, Vermont, Massachusetts, Rhode Island, Connecticut, and New York. The present complaint, filed pursuant to 28 U.S.C.A. §§ 1336, 2321–2325 by four certificated carriers more or less in competition with Auclair, asks this court to set aside said order as unlawful and void. All the plaintiffs appeared in the proceedings before the Commission as intervenors in opposition to Auclair's application.

Prior to making the application which led to the issuance of the Commission's order now under review, Auclair was already established in business as a common carrier by motor vehicle under certificates of public convenience and necessity authorizing, among other things, the transportation of "machinery" between Manchester, N. H., on the one hand, and, on the other, points in Maine, Massachusetts, Rhode Island, Vermont, Connecticut, and New York. In the conduct of its operations Auclair maintains terminals at Manchester, N. H., and Charlestown, Mass., and it operates 4 tractors, 17 trucks, 7 trailers, and 2 service cars. One of the trailers is of the low-bed type with a capacity of 25 tons, and 3 of the trucks are equipped with winches and removable stake bodies. In addition, Auclair has a large quantity of rigging equipment and engages in rigging work, both separately and in conjunction with its transportation activities.

Pursuant to § 207 of the Interstate Commerce Act, 49 U.S.C.A. § 307, Auclair on December 1, 1947, filed with the Commission its present application for authority to operate as a common carrier by motor vehicle, in the transportation of "contractors' equipment, building and construction equipment and material, steel, tanks, factory equipment, machinery and machine parts, which because of size or weight, require special equipment or specialized handling and such supplies and materials as are necessary to the installation of the above-named commodities," over irregular routes, "between points and places in New Hampshire, on the one hand, and, on the other, points and places in Maine, Vermont, New Hampshire, Massachusetts, Rhode Island, Connecticut, New York, and New Jersey." As above appears, the order under review granted the application in part only, both as to commodities and territory.

Since plaintiffs make a great point that the order was void and beyond the statutory power of the Commission because of alleged procedural error in the administrative proceedings, we set forth the procedural steps in somewhat more detail than would ordinarily be necessary. Following is what occurred in chronological order:

Upon due notice, Auclair's application was set down for hearing before an Examiner on April 5, 1948, at Concord, N. H. At the hearing several witnesses testified in support of the application and several on behalf of the intervenors in opposition.

On April 23, 1948, the Examiner issued his Report, which contained no subsidiary findings or discussion of the evidence, but merely made the ultimate statutory finding "that public convenience and necessity do not require the operation for which authority is sought", and recommended the issuance by the Commission of an appended order denying the application. (The Commission of course was not bound by the Examiner's finding, and was not obliged to accept the Examiner's recommendation. Federal Radio Commission v. Nelson Brothers Bond & Mortgage Co., 1933, 289 U.S. 266, 285, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406.)

Notice of the report and recommended order was served on the parties, stating that exceptions might be filed within 20 days and further providing that at the expiration of such period "the attached order will become the order of the Commission and will become effective unless exceptions are filed seasonably or the order is stayed or postponed by the Commission."

On May 12, 1948, which was before the expiration of the 20-day period for filing exceptions, the Commission issued an order that "the date on which said recommended

order shall become the order of the Commission and become effective, be, and it is hereby, postponed to May 24, 1948, unless prior to that date said order is stayed or further postponed by the Commission."

On May 14, 1948 Auclair, the applicant, filed what was originally titled "Exceptions to the Report and Recommended Order and Request for Reopening and Further Hearing."

On May 18, 1948 the Commission, Division 5, issued an order that "the taking effect of the said recommended order in the above-entitled matter be, and it is hereby, stayed pending the further order of the Commission." That order we take to mean, and the Commission evidently so understood it, that the taking effect of the Examiner's recommended order was stayed indefinitely until a further order of the Commission vacating the stay—not, as plaintiffs seem to think, that the stay will be automatically vacated upon the entry of *any* further order of the Commission in the course of the proceeding. In fact, as appears below, the Commission never issued any order vacating the stay, and the Examiner's recommended order never became effective as the order of the Commission.

By letter from the Director of the Bureau of Motor Carriers to counsel for the applicant, acknowledging receipt of the exceptions, it was stated that the exceptions were received by the Commission a day late; that under the circumstances "the effectiveness of the recommended order is stayed, and your exceptions have been received as a petition for reconsideration and further hearing."

Thereafter, extended answers to the petition for reconsideration were filed on behalf of the intervenors.

On June 25, 1948 the Commission, Division 5, issued an order as follows:

"Upon consideration of the record in the above-entitled proceeding, and of petition of applicant for reconsideration and further hearing, dated May 12, 1948, and of four replies by certain interveners; and good cause appearing therefor:

"*It is ordered,* That said petition be, and it is hereby denied."

Without further notice to the parties, the Commission, Division 5, on October 7, 1948, issued its report and order in the case. The report made certain detailed findings based upon the testimony taken at the hearing before the Examiner, found that the applicant was fit and able, financially and otherwise, to conduct the operations thereinafter authorized, and further found that the present and future public convenience and necessity required the granting of the application to the extent set forth in the opening paragraph of this opinion. The accompanying order stated that the application, except to the extent granted in said report, was thereby denied. This is the order which we are asked to review and set aside.

On November 12, 1948, the Commission granted to the intervenors an extension of time to November 26, 1948, within which to file petitions for reconsideration of said report and order of October 7, 1948. Such petitions were duly filed by the intervenors.

By order issued May 2, 1949, the Commission itself, at a general session, upon consideration of the record and of the petitions by intervenors for reconsideration, ordered that said petitions be denied.

Finally, on July 13, 1949, the Commission, Division 5, issued its Certificate of Public Convenience and Necessity to Auclair Transportation, Inc., in the terms above indicated.

Under § 17(5) and (10) of the Interstate Commerce Act, 49 U.S.C.A. § 17(5) and (10), if no exceptions are timely filed, an Examiner's recommended order "shall become the order of the Commission and become effective unless within such period the order shall have been stayed or postponed by the Commission or by a duly designated division thereof." To the same effect is Rule 97(a) of the Commission's Rules of Practice. But here the recommended order did not become the order of the Commission upon failure of Auclair to file exceptions within 20 days, because the Commission, Division 5, by its orders of May 12 and 18, 1948, as it was empowered to do, indefinitely stayed the effectiveness

of the recommended order. Even though Auclair's attempted Exceptions were filed a day late, the Commission was authorized by § 17(8) of the Act and by its own Rule 101 to receive and entertain this document as a petition for reconsideration and further hearing. That course having been taken, and the recommended order not having yet become effective, § 17(8) itself provides that the recommended order "shall be stayed or postponed pending disposition of the matter by the Commission or appellate division".

We can appreciate that plaintiffs may have misunderstood the effect of the order of the Commission, Division 5, issued June 25, 1948, ordering that the applicant's petition for reconsideration and for further hearing be denied. Apparently they thought the Commission had thus finally disposed of the case, and had in effect reaffirmed the Examiner's report and vacated the stay upon the coming into effect of the recommended order.[1] What the Commission meant was that it was taking the case to its own bosom for decision and order; that it was satisfied to decide the case on the record as it then stood, including Auclair's petition for reconsideration, and the lengthy answers thereto by the intervenors; and that there was no need of any further hearing. At the top of the report later issued by the Commission, Division 5, there appears, just under the title of the case, the following: "Submitted June 25, 1948. Decided October 7, 1948." In other words, the order of June 25, 1948, meant no more than that the record was closed, the case submitted, and taken under advisement. Indeed, even in the absence of exceptions to the Examiner's Report or of a petition for reconsideration, § 17(5) authorized the Commission, upon its own motion, to reconsider the matter covered by the Examiner's Report "either upon the same record or after further hearing, and such recommended order shall thereupon be stayed or postponed pending final determination thereof."

■ The foregoing sufficiently indicates the unsoundness of plaintiffs' argument that the Commission's order of June 25, 1948, denying Auclair's petition for reconsideration, had the effect of terminating the stay so that the recommended order thereupon automatically became the order of the Commission; that this was "a termination of the proceeding and exhausted the authority of the Commission in the premises"; and that the further order of the Commission of October 7, 1948, granting the application in part, was without statutory support and void. The premise of the argument is a mistaken one; the recommended order never became the order of the Commission. If plaintiffs misunderstood the effect of the order of June 25, 1948, we cannot see that they suffered any prejudice thereby, nor do we think that such misunderstanding should give plaintiffs any vested right in the Examiner's recommended order.

■ Furthermore, even if such recommended order had become effective as the order of the Commission, nevertheless the Commission, or a duly designated division thereof, would have had power to modify the order. Section 204(f) of the Act, 49 U.S.C.A. § 304(f), provides that notwithstanding any other applicable provision of the Act, "to the extent that it may be in the public interest, the Commission may modify, change, suspend or waive any order, certificate, permit, license, rule, or regulation issued under this chapter." An order denying, in its entirety, an application for a certificate may therefore be subsequently modified by an order granting the application in part, as was done here. Assuming without deciding that the parties would be entitled to notice before an effective order is thus modified, plaintiffs could show no prejudice from lack of notice in this case. After the Commission's order of October 7, 1948, granting the application in part, was issued, the Commission granted to the intervenors an extension of time within which to file petitions

1. If the Commission had done that it would, pursuant to its Rule 97(a), have mailed a notice to the parties "stating that the recommended order has, giving the date, become the order of the Commission."

for reconsideration. The intervenors availed themselves of this privilege, and filed such petitions. Subsequently the full Commission, after consideration of the entire record, denied the petitions of intervenors for reconsideration. Not until after that did the Commission perform its final act of issuing to Auclair its certificate of public convenience and necessity. Plaintiffs were accorded due process in the administrative proceedings.

■ Plaintiffs also contend that the findings of the Commission are insufficient in law to support the challenged decision and order. In this connection, the main point advanced is that the ultimate finding of public convenience and necessity must necessarily collapse in view of a subordinate finding in the Commission's report, as follows: "The application is opposed by 7 motor common carriers which collectively hold appropriate authority to serve the territory here considered and have the necessary equipment to provide service for the shippers supporting the application. Several of these carriers also engage in rigging work, both separately and in connection with their transportation activities. Their equipment is not being used to capacity and they are in position to handle additional business in their respective territories."

Moreover, it is said that an application for a certificate cannot be granted in the absence of a subsidiary finding that the existing facilities of certificated carriers are inadequate. However that may be where the applicant is seeking authority to inaugurate a brand-new operation in a field already occupied by certificated carriers adequately equipped to render the service, the Commission was dealing with quite a different situation in the case at bar. The applicant here was already in the field as a competitor of the plaintiffs, and was only seeking removal of certain limitations on its existing authority in order better to serve its customers and would-be customers, several of whom appeared in support of the application. In a somewhat similar case, this court in A. B. & C. Motor Transp. Co., Inc., v. United States, D.C. 1946, 69 F.Supp. 166, 169, after full consideration, held that a finding of public convenience and necessity "is not invalidated by the absence of a positive finding that existing carriers are not providing adequate transportation facilities", and we added that an increase in competition "is not a reason for denying the Commission's authority to issue a certificate."

In its report the Commission emphasized that, under applicant's existing authority, it "has served, and undoubtedly will continue to serve, the supporting shippers to the extent of its operating rights." The report dealt specifically with the requested enlargement of existing authority both as to commodities transported and as to territory served. With respect to the former, the Commission found: "It is evident, however, that the term 'machinery' does not include all the commodities which the supporting shippers have or may have occasion to ship. Such commodities ordinarily would be heavy or cumbersome and a grant of authority to transport commodities, which because of their size or weight require special equipment or specialized handling, would permit applicant to render a more complete service to those who support the application. In our opinion, the evidence fairly warrants such a grant."

With reference to enlargement of territory, the application sought additional authority to operate between all points in New Hampshire (instead of Manchester alone) and all points in New Jersey, which latter State was not included at all within the existing authorized territory. This enlargement was denied, except for the grant of authority to operate between Elizabeth, N. J., and Manchester, N. H. The Commission found: "We are not convinced, however, that the record justifies any substantial increase in the territory presently authorized to be served. One shipper has had some difficulty in obtaining satisfactory service for the movement of large and heavy articles from Elizabeth to Manchester, and we believe applicant should be authorized to serve that additional point. In all other respects, however, applicant has failed to establish that the proposed operation is or will be required

602

by the present or future public convenience and necessity."

As to possible adverse effect on competitors from the proposed enlargement of applicant's existing authority, the Commission found: "Since applicant now has authority to provide most of the service for which a need was expressed, it does not appear that the limited authority hereinafter granted will affect adversely, to any material extent, the operations of existing carriers."

We think the Commission's findings adequately support the decision and order. Here is an applicant already engaged as a common carrier in the field, with expensive specialized equipment for loading, transporting, unloading and installing all kinds of heavy, cumbersome commodities. It does not seem that the public interest would be served by requiring the applicant to turn away the business of shippers who desire its services in the transportation of heavy commodities from and to the Manchester, N. H., area if the proffered commodities do not fall within the category of "machinery". Bearing in mind the Commission's expertness and primary responsibility in weighing the factors affecting public convenience and necessity, and the well-understood limitations on judicial review in this type of case, we cannot say, on the basis of the Commission's findings, that it was irrational to conclude that the present and future public convenience and necessity would be served by the limited enlargement of applicant's existing authority, as provided in the order. The word "necessity" in the broad statutory formula must not be taken too literally, especially in a case like the present, as implying that a transportation crisis of major proportions would ensue unless the application were granted. If that were the meaning, the use of the word "convenience" would be an obvious superfluity.

As to the sufficiency of the evidence to sustain the Commission's findings, we need only say that after an examination of the transcript in full we have concluded that this is a routine case in which the courts must accept the findings and conclusion of the administrative body as not lacking in substantial evidentiary support.

A judgment will be entered dismissing the complaint.