**NORFOLK SOUTHERN BUS CORP. v. UNITED STATES et al.**

Civ. A. No. 1084.

United States District Court
E. D. Virginia, Norfolk Division.

Argued March 27, 1950.

Decided May 12, 1950.

Dissenting opinion May 22, 1950.

Bryan, District Judge, dissented.

James G. Martin, S. Burnell Bragg and Arthur J. Winder, all of Norfolk, Va., for plaintiff.

George R. Humrickhouse, U. S. Atty., Richmond, Va., Edward M. Reidy, Associate Chief Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

Willard R. Ashburn, Norfolk, Va., I. M. Bailey, Raleigh, N. C., for Virginia Dare Transp. Co., Inc.

Before DOBIE, Circuit Judge, . and HUTCHESON and BRYAN, District Judges.

DOBIE, Circuit Judge.

Plaintiff, Norfolk Southern Bus Corporation, instituted this civil action against the defendants, United States of America, Interstate Commerce Commission and Virginia Dare Transportation Company, Incorporated, on December 22, 1949, seeking to set aside and annul an order of the Commission dated November 7, 1949, and to enjoin the issuance by the Commission to Virginia Dare of a certificate of public convenience and necessity pursuant to this order. Norfolk Southern, a Virginia corporation with its principal office in Norfolk, Virginia, is a common carrier of passengers by motor vehicle between Norfolk and Elizabeth City, North Carolina. Virginia Dare is a North Carolina corporation, with its principal office in Manteo, North Carolina, and formerly operated as a common carrier of passengers by motor vehicle between Nanteo, Sligo and Elizabeth City, all in North Carolina.

On December 5, 1946, the Commission granted Virginia Dare (46 M.C.C. 842) authority to transport passengers and their baggage, and mail, express and newspapers, in the same motor vehicle with passengers, between Sligo, North Carolina, and Norfolk, Virginia, over North Carolina-Virginia Highway 170 serving Moyock, North Carolina, as an intermediate point, subject to the following restriction: "The service authorized herein is subject to the restric-

tion that no passengers or other traffic shall be transported between Norfolk, on the one hand, and, on the other, points on said carrier's presently authorized route between Sligo and Elizabeth City, including Elizabeth City."

This had the effect of giving Virginia Dare a through route between Manteo and Norfolk, with service at Moyock and at all points between Manteo and Sligo, inclusive, but prevented Virginia Dare from giving any service between Norfolk, on the one hand, and, on the other, points on its route between Sligo and Elizabeth City, including the latter. An appropriate certificate was issued July 3, 1947.

In motor carrier parlance, this was known as a "closed door" operation. Upon subsequent petition of Virginia Dare, the proceeding was reopened for further hearing solely with respect to the restriction just mentioned and with respect to the question of what service, if any, should be authorized at points between Sligo and Norfolk.

Norfolk Southern protested the lifting of this restriction. Hearings were held on February 25, 1948, and May 3 and 4, 1948, at which times extensive evidence was produced by both Virginia Dare and Norfolk Southern. The matter was referred to an Examiner for a report and a recommended order. The Examiner concluded that the restriction should not be removed. Exceptions were filed by Virginia Dare to the Examiner's report. On August 15, 1949, Division 5 of the Commission, consisting of three Commissioners, issued a report reversing the Examiner, with one Commissioner dissenting. By their order of November 7, 1949, Norfolk Southern's petition for reconsideration was denied by the entire Commission, which in effect affirmed the decision of Division 5 that the restriction should be lifted.

Two main questions are presented for our determination: (1) Has the Commission made sufficient Findings of Fact upon which to base the order? and (2) Is there substantial evidence to support the order?

■■■ (1) The Commission is, of course, not bound to accept the Examiner's

conclusion that the restriction should not be lifted. Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U.S. 266, 285, 53 S.Ct. 627, 77 L.Ed. 1166; Hall & Sons v. United States, D. C., 88 F.Supp. 596, 598. Further, there is no significance in the fact that the report, which was affirmed by the entire Commission, was made by only three Commissioners.

The authority of the Commission to issue certificates of convenience and necessity is found in Section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307(a): "Subject to section 310, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, *if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions on this part and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity*; otherwise such application shall be denied: * * *." (Italics ours.)

■■■ The nature and extent of the Commission's authority under the above provisions has been the subject of numerous decisions. The law thereon is settled. The issue of public convenience and necessity is a matter peculiarly requiring the exercise of the Commission's expert judgment in the field of transportation. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 482, 490, 62 S.Ct. 722, 86 L.Ed. 971. In exercising this administrative function there are no specifications of considerations by which the Commission is to be governed in determining whether public convenience and necessity require the inauguration of motor-vehicle service. As under section 1(18) dealing with the extension and abandonment of railway lines, it is "the duty of the Commission to find the facts and, in the exercise of a reasonable judgment, to determine that question." Chesapeake & Ohio Ry. Co. v. United States, 283 U.S. 35, 42, 51 S.Ct. 337, 339, 75 L.Ed. 824; Colorado v. United States, 271 U.S. 153, 168, 46 S.Ct. 452, 70 L.Ed.

878; Texas & Pacific Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, 273, 46 S.Ct. 263, 70 L.Ed. 578.

In its report, Division 5 of the Commission stated, in conclusion: "Upon further hearing, *we find that the present and future public convenience and necessity require operation by applicant, in interstate or foreign commerce, as a common carrier* by motor vehicle of passengers and their baggage, and of mail, express, and newspapers, in the same vehicle with passengers, between Sligo, N. C., and Norfolk, Va., over North Carolina Highway 170 from Sligo to the North Carolina-Virginia State line, and thence over Virginia Highway 170 to Norfolk, serving all intermediate points; *that applicant is fit, willing, and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act and to our rules and regulations thereunder*; that an appropriate amended certificate should be granted, upon receipt from applicant of a request in writing for the coincidental cancellation of the certificate issued herein on July 3, 1947." (Italics ours.)

In connection with the adequacy of the findings in the Commission's report, we quote from Chicago, B. & Q. Ry. Co. v. United States, D. C., 60 F.Supp. 580, 583:

"The principal problems with which we are confronted are whether the order of the Commission is supported by an adequate finding in respect to the basic or quasi-jurisdictional fact upon which the exercise of the statutory power depends and, if so, whether or not such essential finding rests upon a rational basis and is supported by substantial evidence of record.

"In United States v. B. & O. R. Co., 293 U.S. 454, 464, 55 S.Ct. 268, 79 L.Ed. 587, after pointing out the single primary question of fact upon which a finding by the Commission was essential to the exercise of its statutory power, the Court commented upon the distinction between findings of fact which are indispensable and others which are not essential and after referring to State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291, said: 'In the Florida case the legal distinction was pointed out between what may be termed quasi jurisdictional findings, there held to be undispensable, and the "complete statement of the grounds of the Commission's determination" which was declared in Beaumont, S. L. & W. Ry. Co. v. United States, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221, to be desirable for a proper consideration of the case in the courts. The lack of such a complete statement, while always regrettable, because unnecessarily increasing the labor of the reviewing court (compare Virginian Ry. v. United States, 272 U.S. 658, 675, 47 S.Ct. 222, 71 L.Ed. 463), is not fatal to the validity of the order. It is true that formal and precise findings are not required, under section 14 (1) of the Interstate Commerce Act * * *, which declares that the report "shall state the conclusions of the Commission together with its decision." Compare Manufacturers' Ry. Co. v. United States, 246 U.S. 457, 487, 38 S.Ct. 383, 62 L.Ed. 831; Meeker (& Co.) v. Lehigh Valley R. Co., 236 U.S. 412, 428, 35 S.Ct. 328, 59 L.Ed. 644, Ann. Cas.1916B, 691, P.U.R. 1915D 1072. That provision relieves the Commission from making comprehensive findings of fact similar to those required by Equity Rule 70½ * * *. But section 14(1) does not remove necessity of making, where orders are subject to judicial review, quasi jurisdictional findings essential to their constitutional or statutory validity.' (293 U.S. 454, 55 S.Ct. 273.)

"*In the light of this authority, it appears that a finding of the ultimate basic fact is all that is indispensable to the Commission's exercise of the statutory power invoked in this proceeding. As a prerequisite to the validity of its orders, the Commission is not compelled to report special findings as to the underlying or subordinate facts such as were formerly required by Equity Rules 70½, 28 U.S.C.A. section 723 appendix, and now required by Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.* The only basic or quasi-jurisdictional fact, a finding in respect to which is essential to the exercise of the statutory power of the Commission to reduce the established rate involved in this case and prescribed a lower one for the future, is the fact that the subsisting

rate 'is or will be unjust or unreasonable.' Sec. 15(1) of the Act, 49 U.S.C.A. § 15(1)." (Italics ours.)

■ Even though section 8(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1007(b), may now be applicable to the decisions of the Interstate Commerce Commission, we think that the Commission's report contains findings sufficient to support the order. Section 8(b) provides: " * * * The record shall show the ruling upon each such finding, conclusion, or exception presented. All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof."

The Commission here made the ultimate findings as required by the statute, and these ultimate findings are supported by subsidiary findings. The Commission's report describes the authority sought by the application, the existing routes of Virginia Dare, the prior authority, subject to the restriction, granted by the Commission, the reopening of the case upon petition of the Norfolk Southern, and the Examiner's conclusion. It then points out that the findings that Virginia Dare is fit and able to conduct the services at issue and that public convenience and necessity require services by Virginia Dare at all intermediate points between Sligo and Norfolk are unquestioned and justified by the record.

Interventions by public bodies were next referred to and the evidence in support of the application was summarized. The testimony of bus drivers, indicating that on numerous occasions they have been flagged at intermediate points between Elizabeth City and Sligo, by persons seeking passage to Norfolk or to points between Sligo and Norfolk, and the temporary authority under which applicant continued service for about five months between Elizabeth City and Sligo to Norfolk were referred to. The testimony of five public witnesses in support of the application was review.

Next, the Commission reviewed the testimony of eighteen public witnesses appearing on behalf of protestant Norfolk Southern. Schedules showing north and southbound service rendered by Norfolk Southern over its two routes between Norfolk and Elizabeth City are referred to. Operating and statistical exhibits introduced by the Norfolk Southern were reviewed, indicating "that there has been no appreciable overcrowding in recent months." Declining passenger revenue of the Norfolk Southern was referred to and the extent of the decline in recent years shown.

Virginia Dare's contention that it had been unduly limited in its presentation of its testimony and the scope of its cross-examination was overruled, and the Commission stated "In reaching our conclusions, we have considered all the evidence of record." The Commission's report then contains the following important holdings "In several instances we have stated that a 'closed door' passenger operation which prevents any part of the public from riding buses which are operated daily over a regular route is difficult to justify. Generally speaking, restrictions such as contained in applicant's certificate are not in the public interest and can be justified only by unusual circumstances which are not here present. True, Norfolk Southern is now operating at a deficit, but there is no showing that the deficit results primarily from its operations over the Norfolk-Sligo-Elizabeth City route. In our opinion, there is no convincing evidence that removal of the restriction would deprive Norfolk Southern of a material amount of traffic. In any event, we have often found that the public should not be deprived of a new or improved service merely because it might divert some traffic from other carriers. In the circumstances, we conclude that the public convenience and necessity require the rendition by applicant of an unrestricted interstate service."

■ There was no necessity for the Commission to make any specific finding concerning the inadequacy of the existing service. See Davidson Transfer & Storage Co. v. United States, D. C., 42 F.Supp. 215, affirmed 317 U.S. 587, 63 S.Ct. 31, 87 L.Ed.

481; A., B. & C. Motor Transp. Co. v. U. S., D.C., 69 F.Supp. 166, 169. Section 207(b) of the Interstate Commerce Act, 49 U.S.C.A. § 307(b), states: "No certificate issued under this chapter shall confer any proprietary or property rights in the use of the public highways."

Competition among public carriers may be in the public interest and the carrier first in business has no immunity against future competition. See Chesapeake & Ohio Ry. Co. v. United States, 283 U.S. 35, 42, 51 S.Ct. 337, 75 L.Ed. 824; North Coast Transp. Co. v. United States, D.C., 54 F.Supp. 448, 451, affirmed 323 U.S. 668, 65 S.Ct. 62, 89 L.Ed. 543. Even though the resulting competition causes a decrease of revenue from one of the carriers, the public convenience and necessity may be served by the issuance of a certificate to a new competitor. Lang Transp. Corp. v. United States, D.C., 75 F.Supp. 915, 929; Inland Motor Freight v. United States, D. C., 36 F.Supp. 885.

As Circuit Judge Parker stated in Beard-Laney v. United States, D.C., 83 F.Supp. 27, 32, affirmed 338 U.S. 803, 70 S.Ct. 64: "It is for the Commission, not the court, to say what public convenience and necessity requires and whether these will be better served by licensing an additional carrier than by permitting those already licensed to expand their facilities."

In lifting the restriction here, the Commission was not instituting a new service but was simply permitting an improvement of an existing service. Thus the language of Hall & Sons v. United States, D.C., 88 F.Supp. 596, 602, is applicable: "Bearing in mind the Commission's expertness and primary responsibility in weighing the factors affecting public convenience and necessity, and the well-understood limitations on judicial review in this type of case, we cannot say, on the basis of the Commission's findings, that it was irrational to conclude that the present and future public convenience and necessity would be served by the limited enlargement of applicant's existing authority, as provided in the order. The word 'necessity' in the broad statutory formula must not be taken too literally, especially in a case like the present, as implying that a transportation crisis of major proportions would ensue unless the application were granted. If that were the meaning, the use of the word 'convenience' would be an obvious superfluity."

(2) The determinations of the Interstate Commerce Commission, like those of other administrative bodies, will be upheld if within the Commission's statutory power and supported by substantial evidence that the public convenience and necessity are served by the order or certificate. See Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. United States, 322 U.S. 1, 3, 64 S.Ct. 842, 88 L.Ed. 1093; United States v. Wabash R. R. Co., 321 U.S. 403, 408, 64 S.Ct. 752, 88 L.Ed. 827; Interstate Commerce Commission v. Hoboken Manufacturers' R. R. Co., 320 U.S. 368, 378, 64 S.Ct. 159, 88 L.Ed. 107; Interstate Commerce Commission v. Union Pacific R. R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308.

The courts have also stated the rule in these words: "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 765, 83 L.Ed. 1147; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260.

In Virginian Ry. Co. v. United States, 272 U.S. 658, 666, 47 S.Ct. 222, 225, 71 L. Ed. 463, Mr. Justice Brandeis stated: "This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it." See, also, Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941.

In addition, there is a presumption that the Commission has properly performed its official duties, and this presumption supports its official acts. Baltimore & Ohio R. R. Co. v. United States, 298 U.S. 349, 358–359, 56 S.Ct. 797, 80 L.Ed. 1209. Cf. Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 88 L.Ed.

762

333; United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131.

■ The credibility of witnesses and the weight of the testimony are also for the Commission to determine and are not the concern of the courts. See Lang Transportation Co. v. United States, D.C., 75 F.Supp. 915, 930, and the authorities there cited.

■ Under the applicable law it is not necessary for us to present a detailed analysis of the evidence. It will suffice to state that there was evidence that the existing system caused confusion, that many people were refused transportation, that there had been complaints from passengers, that the buses of Norfolk Southern were crowded, that a petition for better services was filed and that the lifting of the restriction would remove ill feeling and afford transportation between Manteo and neighboring points and intermediate stops between Norfolk and Elizabeth City without the necessity of changing buses. This evidence is substantial and supports the Commission's order.

The injunction is denied and the suit dismissed.

Dismissed.

HUTCHESON, District Judge, concurs.

BRYAN, District Judge (dissenting).

In my opinion the report of Division 5, dated August 15, 1949, is invalid because it fails to make any basic findings to sustain its ultimate finding. I cannot agree with the Court's opinion that an ultimate finding is all that is required by law; U. S. v. Pierce Auto Freight Lines, 327 U.S. 515, 533, 66 S.Ct. 687, 90 L.Ed. 821; Hudson Transit Lines v. U. S., D.C., 82 F.Supp. 153, 155, affirmed 338 U.S. 802, 70 S.Ct. 59; Administrative Procedure Act, sec. 8(b), 5 U.S.C.A. § 1007(b), and I search the record in vain for subordinate findings.

To be sure, there are summaries of evidence and observations. If they be taken as findings they deny the Commission's conclusion. Thus the report recites that, as to the confusion in flagging the buses, applicant's drivers say, "the tendency is for fewer persons" to do so; as to Norfolk-Southern buses, even applicant's witnesses believe them "satisfactory" although crowded "on some occasions * * * during the war years"; as to schedules, the frequency of service is shown to be ample; and as to Norfolk Southern's deficit, it is "through no fault of its own" and it has "an expense factor below the average" and "its management * * * good and efficient". Again, the observations that "there is no showing that the deficit results from its operations" over the route in question, and "there is no convincing evidence that removal of the restriction would deprive Norfolk-Southern of a material amount of traffic" are valueless. Too obvious to need proof is the proposition that withdrawal of the restriction would neither lessen the deficit, nor lessen the decline of traffic over the Norfolk-Southern. So no penultimate "finding" sustains the ultimate.

Consequently, I can find no "rational basis" for the order. The Commission presumably had ground to impose the restriction. I would like to know its ground for cancelling it.

I would enjoin the enforcement of the present order until the Commission makes the findings required by law and enters its order thereon.