**ALEXANDRIA, BARCROFT & WASHINGTON TRANSIT CO. v. UNITED STATES et al.**

**Civ. A. No. 596.**

United States District Court
E. D. Virginia, Alexandria Division.

Aug. 4, 1951.

Armistead L. Boothe, Gardner L. Boothe, Alexandria, Va., S. Harrison Kahn, Manuel J. Davis, Washington, D. C., for plaintiffs.

H. G. Morison, John H. D. Wigger, James E. Kilday, and John Ford Baecher, Sp. Assts. to the Atty. Gen.

George R. Humrickhouse, U. S. Atty., David E. Satterfield, III, Asst. U. S. Atty., Richmond, Va., Daniel W. Knowlton, Edward M. Reidy, Samuel R. Howell, and J. Ninian Beall, Washington, D. C., Malcolm D. Miller, Arlington, Va., for defendants.

Before DOBIE, Circuit Judge, HUTCHESON, Chief Judge, and BRYAN, District Judges.

DOBIE, Circuit Judge.

This is a civil action to enjoin and set aside orders of the Interstate Commerce Commission, hereinafter referred to as the Commission, which granted White House Sightseeing Corporation, hereinafter referred to as White House, an extension of its certificate of public convenience and necessity. This case is before the three-judge District Court on plaintiff's petition for (a) a temporary restraining order; (b) an interlocutory order or injunction; (c) permanent injunction. White House and other protesting carriers have been permitted to intervene.

The complaint, filed only by the Alexandria, Barcroft and Washington Transit Company, hereinafter referred to as A. B. & W., seeks to have the orders of the Commission set aside and annulled on the grounds:

1. That plaintiff operates within the territory and over the routes covered by the application of White House before the Commission, and that there is no evidence of record that the interstate service provided by plaintiff between the District of Columbia, on the one hand, and on the other, points and places in Virginia, is inadequate.

2. That the orders of the Commission would authorize White House to "duplicate and blanket existing services and facilities" of the plaintiff, and that "there is no evidence of record to support the conclusions of Division 5 that public convenience and necessity require the additional services of White House in competition with the existing operations of plaintiff * * *."

3. That "the authorized certificate to be issued to White House will substantially duplicate existing services and facilities of the plaintiff to the irreparable injury and damage to the plaintiff, contrary to the provisions of the Interstate Commerce Act," and that "the evidence of record shows and, in fact, the proposed operations of White House authorized by the Commission, attacked herein, will endanger and impair the operations of plaintiff * * *," and that "the findings and conclusions made therein are arbitrary, capricious, and unsupported by the record."

4. That "such Commission action is also unlawful, void, and arbitrary in that its prescription of authority to White House authorizing special operations consisting of round-trip sightseeing or pleasure tours is meaningless and without definition. Such authority can be construed to authorize directly competitive operations with the plaintiff, contrary to the law and Commission decisions thereunder."

Under Section 205(a) of the Interstate Commerce Act, 49 U.S.C.A. § 305(a), the application of White House was referred to Joint Board No. 68. After a hearing, the Joint Board recommended a denial of the White House application. Division 5 of the Commission, upon exceptions, reversed the Joint Board, made the necessary findings of public convenience and necessity and decided in favor of the White House application. Petitions for reconsideration of the decision of Division 5 by the entire Commission were denied.

Under an old certificate, MC-110258, White House was authorized to engage in the transportation over irregular routes of passengers and their baggage, in special operations in roundtrip sightseeing or pleasure tours, beginning and ending at Washington, D. C., and extending to points in Maryland and Virginia within the Washington, D. C. commercial zone as defined in 48 M.C.C. 460, limited, however, to the transportation of not more than six passengers not including the driver thereof, and not including children under 10 years of

age who do not occupy a separate seat or seats. White House also holds appropriate authority to operate passenger buses in providing intrastate sightseeing service between points in the District of Columbia.

In its application for the new certificate (which forms the basis for the suit before us) White House sought authority to operate "as a common carrier of passengers, via irregular routes, between points and places within the commercial zone of Washington, D. C. as defined by the Interstate Commerce Commission, in special and charter sightseeing service, via limousines and buses."

The difference between the authority already held under docket MC-110258 and that applied for in MC-110258, Sub-No. 1 is that the Sub 1 application did not restrict the operations to tours originating and terminating in Washington, D. C., and did not restrict the operations to limousines having a capacity of not more than six adult passengers; and permitted the tours to be conducted partially by limousines and partially by buses.

In its more important legal aspects, this case is quite similar to the decision of this Court in Norfolk Southern Bus Corp. v. United States, D. C., 96 F.Supp. 756, affirmed per curiam 340 U.S. 802, 71 S.Ct. 68, 95 L.Ed. 590, where this Court (District Judge Bryan dissenting) sustained an order of the Interstate Commerce Commission removing a "closed-door" restriction, thus permitting a motor common carrier of passengers to improve its service to the public by picking up passengers that formerly were passed by. We think it is necessary to add little to what was said in the opinion in that case, for, in the light of that opinion, the instant suit must be dismissed.

■ There is no force in A. B. and W.'s contentions that the Commission failed to make adequate findings or that those findings were not supported by adequate and substantial evidence. The Commission (quite properly, we think) found that public convenience and necessity require the operation for which authority was sought by White House, and that White House was fit, willing and able to perform this service and to conform to the Commission's re-quirements, rules and regulations. These essential findings were supported by proper subsidiary findings. One of the most important of these was the finding that no competing carrier was performing the precise service which White House proposed to render under the new certificate.

No useful purpose would be served by an attempt to review the convincing evidence that clearly supports the findings of the Commission. This evidence is quite elaborately set out and analyzed in the brief of the Commission. Particularly strong was the testimony of Paris, President of White House, which found adequate support in the testimony of witnesses Smith, Ford, Abrams, Elswick, Curry, Stokely, Martin, Mitchell, Burroughs and Thrailkill.

■ A. B. and W. failed signally to offer any convincing evidence that the new service of White House would have the effect of seriously decreasing A. B. and W.'s operating revenue. Pertinent here are our observations (with ample citation of authorities) in Norfolk Southern Bus Corp. v. United States, 96 F.Supp. at page 761: "Competition among public carriers may be in the public interest and the carrier first in business has no immunity against future competition. * * * Even though the resulting competition causes a decrease of revenue from one of the carriers, the public convenience and necessity may be served by the issuance of a certificate to a new competitor. * * *

"In lifting the restriction here, the Commission was not instituting a new service but was simply permitting an improvement of an existing service." And see, particularly, the very strong language of Circuit Judge Magruder, in Hall & Sons v. United States, D. C., 88 F.Supp. 596, 602.

We find no merit in the contention that the Commission has failed to comply with the provisions of the Administrative Procedure Act. We answered a similar contention in the Norfolk Southern Bus case, 96 F.Supp. at page 760. There is no occasion here for us to add to what was said there. It seems, too, that the question of any alleged violation of the Administrative Procedure Act was not raised by any pleading filed by plaintiff before the Commission.

Equally untenable is the argument that the certificate in question is "ambiguous," "meaningless," or "without definition." Particular attack is made on the words "round trip sightseeing or pleasure tour" and "special or charter operations." This last phrase is found in the proviso of section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307(a), and has been frequently used by the Commission. The difference between "special operations" and "charter operations" has often been passed upon by the courts. See, particularly, Fordham Bus Corporation v. United States, D. C., 41 F.Supp. 712, 717. Said Mr. Justice Frankfurter in United States v. Maher, 307 U.S. 148, 155, 59 S.Ct. 768, 771, 83 L.Ed. 1162: "The recognized practices of an industry give life to the dead words of a statute dealing with it." And, in Sproles v. Binford, 286 U.S. 374, 393, 52 S.Ct. 581, 587, 76 L.Ed. 1167, Chief Justice Hughes remarked: "The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding."

If by chance White House should indulge in operations not fairly within the ambit of the certificate, adequate remedy is available. Section 204(c), 49 U.S.C.A. § 304(c), of the Interstate Commerce Act clearly provides: "Upon complaint in writing to the Commission by any person, State board, organization, or body politic, or upon its own initiative without complaint, the Commission may investigate whether any motor carrier or broker has failed to comply with any provision of this part, or with any requirement established pursuant thereto. If the Commission, after notice and hearing, finds upon any such investigation that the motor carrier or broker has failed to comply with any such provision or requirement, the Commission shall issue an appropriate order to compel the carrier or broker to comply therewith. Whenever the Commission is of opinion that any complaint does not state reasonable grounds for investigation and action on its part, it may dismiss such complaint."

The proviso in Section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307(a), reads: "* * * Provided, however, That no such certificate shall be issued to any common carrier or passengers by motor vehicle for operations over other than a regular route or routes, and between fixed termini, except as such carriers may be authorized to engage in special or charter operations." This proviso has been scrupulously observed by the Commission and serves to prevent White House, by the certificate before us, from going into the mass transportation business, and thereby becoming a serious competitor for such business with A. B. and W.

We find nothing in the cases relied upon by plaintiff which militates against the conclusions we have reached. See, particularly, Crescent Express Lines v. United States, 320 U.S. 401, 64 S.Ct. 167, 88 L.Ed. 127; Fordham Bus Corp. v. United States, D. C., 41 F.Supp. 712; Campus Travel Co. Inc. v. United States, D. C., 72 F.Supp. 711; Noble v. United States, 319 U.S. 88, 63 S.Ct. 950, 87 L.Ed. 1277; Lee Transportation Co. v. Elliott, 44 M.C.C. 437.

The civil action of the plaintiff is accordingly dismissed.

Dismissed.

STERLING HUTCHESON, Chief Judge, and BRYAN, J., concur.