## BADGETT et al.

v.

## UNITED STATES.

Civ. No. 1476.

United States District Court
S. D. West Virginia,
Charleston Division.

July 19, 1954.

David G. MacDonald, Washington, D. C., for West Virginia Motor Truck Ass'n, Inc.; Smith Transfer Corp., and Bell Lines, Inc., intervenors in protest.

John C. White, Charleston, W. Va., for C & D Motor Delivery Co.; Greig Freight Lines, and others, intervenors in opposition.

Isaac K. Hay, Asst. Chief Counsel, Washington, D. C., pro hac vice, on behalf of the Commission.

Richard T. Wilson, Jr., counsel for Chesapeake & Ohio R. Co., Richmond, Va., on behalf of the Railroad.

Elmer H. Dodson, Asst. U. S. Atty., Charleston, W. Va., on behalf of the Government.

Willard Memler, Anti-Trust Division, Department of Justice, Washington, D. C., pro hac vice.

Before DOBIE, Circuit Judge, and WATKINS and MOORE, District Judges.

DOBIE, Circuit Judge.

G. R. Badgett, numerous other motor-truck operators and the West Virginia Motor Truck Association, Inc., filed, as plaintiffs, a civil action in the United States District Court for the Southern District of West Virginia, seeking to set aside an order of the Interstate Commerce Commission (hereinafter called the Commission) granting a certificate of convenience and necessity to the

Chesapeake and Ohio Railway Company (hereinafter called C. & O.), covering certain specified motor truck operations in the State of West Virginia.

Hearing was held on the C. & O. application before Examiner George A. Dahan, at Charleston, West Virginia, on July 30 and 31, 1952. Briefs were filed with the Examiner on behalf of applicant and on behalf of the motor common carriers who had appeared at the hearing as protestants and intervenors. By recommended report and order served November 25, 1952, the Examiner recommended that the authority be granted to conduct the operation proposed subject to the condition that shipments transported should have immediate prior or subsequent movement by rail. Protestants and intervenors filed exceptions and briefs in support of exceptions to the report and order recommended by the Examiner. Applicant also filed exceptions to certain minor omissions in the report. The decision of Division 5 of the Commission granted the application in the form recommended by the Examiner with the minor changes requested by the applicant in its exceptions. The petition of protestants and intervenors for reopening and reconsideration, and alternatively, for further hearing, was timely filed. The Commission denied this petition of protestants and intervenors.

From the closing paragraphs of the report of Division 5 of the Commission, we quote:

"We find that the present and future public convenience and necessity require operation by applicant, in interstate or foreign commerce, as a common carrier by motor vehicle of general commodities, between the points and over the routes described in Appendix B hereto, subject to the following conditions:

(1) The service by motor vehicle to be performed by applicant shall be limited to service which is auxiliary to, or supplemental of, its rail service.

(2) Applicant shall not serve any point not a station on its rail lines.

(3) All shipments transported by applicant shall move on a through bill of lading involving in addition to the motor carrier movement by applicant, an immediately prior or subsequent movement by rail.

(4) Such further conditions as the Commission in the future may find it necessary to impose in order to restrict applicant's operations by motor vehicle to service which is auxiliary to, or supplemental of, rail service.

We further find that applicant is fit, willing, and able properly to perform the service herein authorized and to conform to the requirements of the Interstate Commerce Act and our rules and regulations thereunder."

Plaintiffs contend that the order in question exceeds the power of the Commission, that the findings of the Commission are erroneous, inconclusive, conflicting and find no adequate support in the evidence, that the Commission in arriving at these findings overlooked material evidence, and that these findings furnish no proper support for the Commission's order. We think these contentions are utterly lacking in merit and that the instant civil action must be dismissed.

The approach and viewpoint of the courts in cases such as the instant case before us have been clearly manifested in a long line of judicial decisions. Said Mr. Justice Cardozo, in Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 694, 78 L.Ed. 1260:

"The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. In this instance the care and patience with which the Commission fulfilled its appointed task are plain, even to

the casual reader, upon the face of its report."

We think the second sentence of this quotation is peculiarly applicable to the instant case.

We append (omitting the elaborate citation of cases in each instance given) several quotations from the opinion in Norfolk Southern Bus Corporation v. United States, D.C., 96 F.Supp. 756, 761, 762:

"Competition among public carriers may be in the public interest and the carrier first in business has no immunity against future competition. * * * Even though the resulting competition causes a decrease of revenue from one of the carriers, the public convenience and necessity may be served by the issuance of a certificate to a new competitor.

\* \* \* \* \* \*

"In lifting the restriction here, the Commission was not instituting a new service but was simply permitting an improvement of an existing service. Thus the language of Hall & Sons v. United States, D.C., 88 F. Supp. 596, 602, is applicable: 'Bearing in mind the Commission's expertness and primary responsibility in weighing the factors affecting public convenience and necessity, and the well-understood limitations on judicial review in this type of case, we cannot say, on the basis of the Commission's findings, that it was irrational to conclude that the present and future public convenience and necessity would be served by the limited enlargement of applicant's existing authority, as provided in the order.' * * *

"The determinations of the Interstate Commerce Commission, like those of other administrative bodies, will be upheld if within the Commission's statutory power and supported by substantial evidence that the public convenience and necessity are served by the order or certificate. \* \* \*

\* \* \* \* \* \*

"In addition, there is a presumption that the Commission has properly performed its official duties, and this presumption supports its official acts. \* \* \*

"The credibility of witnesses and the weight of the testimony are also for the Commission to determine and are not the concern of the courts."

See, also, the opinion of Mr. Justice Reed, in Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051.

The subjoined extract from the Commission's report, which finds ample support in the record and which we unqualifiedly approve, almost in itself requires the conclusions that we have reached.

"We do not agree that a new service is proposed by the instant application. Applicant though it has suffered losses therein, has not, in fact, abandoned its less-than-carload service and it should not be denied the right to improve this service. The application is not one in which authority is sought to provide an all-motor service the same as provided by the existing motor carriers. The proposed operation is designed solely to improve applicant's present less-than-carload service in the territory. The present service is slow, inefficient and expensive. And it is not satisfactory to applicant and the shipping public. The authority sought will not enable applicant to enter a new field, but will permit it to substitute for the present service a new efficient form of service which will be faster and more economical in the transportation of less-than-carload rail traffic which applicant has been and is obligated to transport. We do not believe it to be the intent of the Interstate Commerce Act to vest in one class of carriers the right to require the continuation by another of an inefficient and more costly method of operation. Existing motor carriers will not be

materially affected by the proposed improvement in applicant's merchandise service. The preponderant portion, if not all, the interstate traffic which applicant will handle in the proposed operation will be traffic which applicant has been transporting, because it will move by railroad beyond Charleston or Huntington and from origin of destination on rail billing and at rail rates. The proposed coordinated service will not result in such increased interstate traffic that it would seriously endanger the operations of existing motor carriers. The public should not be deprived of the benefit of an improved service simply because it might divert some traffic from other carriers."

We find no adequate reason for disturbing the Commission's finding:

"Existing motor carriers cannot be used in the proposed service. Such motor carriers are obligated to serve points which are not on the proposed routes and they would be unable to furnish the co-ordinated schedules required in the proposed substituted service. A unity of interest and common control and management are required successfully to accomplish the necessary co-ordination of rail and motor operations."

The same may be said of the Commission's refusal to impose upon the C. & O. the key-point restrictions, particularly at Huntington and Charleston, which were sought by the protesting carriers. As the Commission properly found, such restrictions, in addition to the prior or subsequent rail movement condition, would be unnecessary and "unduly restrictive." And, as the Commission clearly set out: "In any event, we have a continuing and constant control over the substituted motor-for-rail service through the reservation of the right to impose further conditions and restrictions to restrict applicant's operations by motor vehicle when found necessary."

The civil action of the plaintiffs, for the reasons set out, is, accordingly, dismissed.

Dismissed.

MOORE, J., concurs.