ASHWORTH TRANSFER, INC., a corporation, Garrett Freightlines, Inc., a corporation, Ringsby Truck Lines, Inc., a corporation, G. Grant Sims, et al., a partnership, dba Salt Lake Transfer Company, Plaintiffs,

v.

UNITED STATES of America, Barton Truck Line, Inc., a corporation, and Interstate Commerce Commission, Defendants.

No. C 251-69.

United States District Court,
D. Utah, C. D.

June 8, 1970.

**200**

Keith E. Taylor, and Gordon L. Roberts, Salt Lake City, Utah, for plaintiffs.

William S. Richards, Salt Lake City, for defendant Barton Truck Line, Inc.

C. Nelson Day, U. S. Atty., for the United States.

Jerome E. Sharfman, Washington, D. C., for defendant Interstate Commerce Commission.

Before LEWIS, Chief Circuit Judge and ARRAJ and CHRISTENSEN, District Judges.

CHRISTENSEN, District Judge.

This is an action founded on 28 U.S. C.A. § 1336(a) (Supp. 1970), in which the plaintiffs seek to set aside in part an order of the Interstate Commerce Commission. The order under attack grants to Barton Truck Line, Inc. the authority to provide motor carrier service for general commodities and explosives to certain areas in northeastern Nevada. Plaintiffs complain of this order principally because it grants to Barton unrestricted authority to interline general commodity and explosives shipments.[1]

In August, 1966, the Commission made a preliminary determination without hearing that there was an urgent need for motor carrier service in northeastern Nevada and that none was available. Pursuant to this determination Barton Truck Line, Inc. was granted temporary authority to serve this area. An initial restriction on the temporary authority against interlining and tacking was lifted in December, 1967.

Barton applied for permanent authority which was granted by the Commission report and order of January 29, 1969. In re Barton Truck Line, Inc., Extension-Montello, 110 M.C.C. 274 (ICC No. 114818; Sub No. 10, Jan. 29, 1969), aff'd by Commission order of May 22, 1969. In this proceeding upon Barton's motion the Commission followed its modified procedure under which evidence is adduced by verified statements and an oral hearing is denied unless there is a showing by controverting affidavits that material facts are in dispute. See 49 CFR §§ 1100.45–54 (1969).

Denying several motions of the protesting truck carriers for an oral hearing on certain issues, the Commission entered findings and ordered that a certificate of public convenience and necessity should issue under which Barton Truck Line, Inc. has authority to serve shippers and receivers of freight over regular routes between certain points in Utah and the Nevada cities of Mon-

---

1. "Interlining" is defined for our purposes as the practice whereby a carrier accepts shipments whose destination, or origin, or both are beyond the carrier's certified routes, and delivery or pick-up are accomplished by means of a connecting carrier. *See* Gilbertville Trucking Co. v. United States, 371 U.S. 115, 121 n. 2, 83 S.Ct. 217, 9 L.Ed.2d 177 (1962).

tello, Wendover and as far west as Wells, including authority to service intermediary off-route points. The authorization includes the transportation of general commodities (except those of unusual value, household goods as defined by the Commission, commodities in bulk, and commodities that require special equipment) and also classes A and B (dangerous) explosives. The grant is not restricted against interlining, which has the effect of permitting Barton to participate in Utah-California overhead traffic. Formerly Barton had had permanent authority to serve Wendover from Salt Lake City, but this authority was restricted against interlining; its old Wendover route is subsumed by its new route which permits interlining.

Such evidence as was adduced in the modified proceeding is discussed in connection with the various issues raised by protestants. Each of the four protesting truckers has various interests that are affected by the Commission's order, but we will integrate their claims for the purposes of discussion and simply refer to them as protestants' claims:

1. Protestants claim that the Commission's failure to impose a restriction against the interlining of general commodities was arbitrary and capricious, without substantial supporting evidence and contrary to law; they also claim that they were wrongfully denied an oral hearing and the right to cross examine the applicant's witnesses on certain points pertaining to this issue.

2. Protestants further claim that the Commission's action in granting explosives authority to the applicant similarly was without basis in fact or law and that they were wrongfully denied an oral hearing and the right to cross examine the applicant's witnesses in certain respects pertaining to this issue.

We shall discuss these claims in the order mentioned.

I

Certain aspects of the Commission's grant of general commodity authority to

Barton are not contested. The Commission's findings supported by uncontroverted evidence show a public need for Barton's regular route service in general commodities in the sparsely settled areas of northeastern Nevada and a public need for limited interlining of shipments originating from or destined to points within northeastern Nevada. The need had not been fulfilled by existing carrier services and Barton's service under its prior temporary authority in the area had been satisfactory.

But the Commission did not impose a restriction that would preclude Barton's participation in Utah-California overhead traffic, and in this respect made reference to the following considerations and findings:

> Moreover, we believe that the grant of authority should not be restricted against interlining of traffic with applicant's connecting carriers, for to so limit would detract from the economic feasibility of the proposed service. Notwithstanding the fact that applicant has been interlining overhead Utah-California traffic with Wells Cargo under its temporary authority, protestants have made no specific showing of the extent of such traffic, if any, having been siphoned from their services. In the circumstances, considering protestants' extensive overall operations, we believe that any reduction in traffic which protestants might suffer will be relatively minor. This factor, we believe, is more than offset by the benefit in service which the shipping public, as represented by shippers located in the communities to be served, will derive in the form of improved motor transportation service.

In re Barton Truck Line, Inc., Extension-Montello, 110 M.C.C. 274, 282 (ICC No. MC–114818; Sub–No. 10, Jan. 29, 1969).

■■ Apart from the asserted right to cross examine, the dispositive question is whether the applicant had the burden of showing that present or future public convenience and necessity required that the interline restriction should not be

imposed. Interlining generally is a right and duty of common carriers, and due to the undesirable complications created by restrictions on operating rights, the Commission follows a well established policy that restrictions against interlining will be imposed on a new grant of authority only where the restriction is shown to be necessary in the public interest. *E. g.*, Midwest Emery Freight System, Inc. v. United States, 293 F. Supp. 403, 407 (N.D.Ill.1968); Aero Mayflower Transit Co. v. United States, 95 F.Supp. 258, 262 (D.Neb.1951). In the ordinary circumstance an initial burden is on the protesting carriers to show that a newly certificated route should be restricted against interlining once the basic grant of authority has been shown to be required by public need. Application to expand a certified route by the extinguishment of an interline restriction, however, is distinguishable and constitutes itself a proposed new service for which the applicant must show a public need; otherwise existing services are entitled to protection from the establishment of additional competition. *See, e. g.*, Braswell Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98, 102–103 (W.D.Tex.1967), aff'd per curiam, 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968); Garrett Freightlines, Inc. v. United States, 307 F.Supp. 1245 (D. Idaho 1969).

The proposed new service for which applicant Barton had the burden for showing a public need was the service to shippers and receivers within northeastern Nevada. The right to interline Utah-California overhead traffic followed as a reasonable concomitance of providing such service to the Nevada area, and it was unnecessary that Barton make an independent showing of public need for unrestricted authority unless it first appeared that a restriction was warranted.

■ Protestants urge the burden to show a public need for removal of an interline restriction placed upon the applicant in Garrett Freightlines, Inc. v. United States, 307 F.Supp. 1245 (D. Idaho 1969). In *Garrett* the applicant sought to expand its certified routes by the addition of two off-route ranches and the removal of an interline restriction, and the court held that a showing of need for service to the two ranches was insufficient to sustain a grant of unrestricted authority along the entire route of the applicant. Although Barton had had previous authority subject to an interline restriction to serve Wendover, which is subsumed by its proposed new authority, the Commission's decision that the Wendover restriction did not shift to Barton a burden to show its new authority in the public interest should be unrestricted is justified by the substantiality of the new authority. In light of the absence of a showing by protestants that a restriction was warranted, the finding of need for the proposed route encompassing large areas in sparsely populated northeastern Nevada is sufficient to sustain the grant of unrestricted authority along the entire proposed route.

■ Protestants further maintain that the order should be set aside because the Commission pursuant to its modified procedure denied protestants' requests for an oral hearing and the right to cross examine Barton's witnesses on certain issues and especially on whether it was economically feasible for Barton to operate under an interline restriction. We have held that the finding of need for general commodity service within northeastern Nevada is sufficient by itself to sustain the authority granted. The applicant's affidavits as to such need were not controverted below, nor are the Commission's findings on such need challenged here. We note further that protestants made no showing adverse to such evidence as was presented by the applicant on the issue of economic feasibility, nor did it avail itself of discovery procedures to determine whether such a showing could be made. The utilization of discovery procedures may have obviated the alleged need for confrontation and cross examination of witnesses and

the alleged necessity for an oral hearing. Allied Van Lines Co. v. United States, 303 F.Supp. 742, 749 (C.D.Cal.1969). The viability and usefulness of the modified procedure depends upon the general principle that a party cannot simply fail to controvert the veracity of sworn statements and then succeed in a demand for the right of cross examination. *Id. See also,* National Trailer Convoy, Inc. v. United States, 293 F. Supp. 634, 636 (N.D.Okl.1968); United Transports, Inc. v. United States, 245 F.Supp. 561, 565 (W.D.Okl.1965), aff'd per curiam, 383 U.S. 411, 86 S.Ct. 1064, 15 L.Ed.2d 840 (1966).

■ Protestants also urge that denial of an oral hearing is unfair if they are to be required to carry the burden, as indeed they are, of showing that future or present public convenience and necessity require the imposition of an interline restriction. We again note the availability of discovery procedures under the Commission's modified procedure. 49 CFR §§ 1100.54, 1100.57, 1100.59 (1969). Protestants argue that the burden placed upon them would be met by showing the material and adverse effects on competition arising from a grant of unrestricted authority to Barton, that this matter is in dispute, and that such showing is possible only by a comparison of their own traffic studies with those of Barton, which Barton did not furnish as supporting evidence, to determine the traffic siphoned from their established routes. The Commission concluded that any reduction in traffic which protestants might suffer would probably be relatively minor in light of their overall operations—through services which are not encumbered by the possible delays and damage often arising out of interlining. In light of protestants' admitted inability, despite Barton's operation over a substantial period under unrestricted temporary authority, to show upon the basis of their own information a diversion of their traffic, and in view of protestants' failure to attempt the utilization of discovery procedures, the Commission's con-

clusion is not violative of any concept of fundamental fairness or due process.

■ We conclude that the grant of authority to provide unrestricted service in general commodities along the entire proposed route to Barton Truck Line, Inc. is supported by substantial evidence and is consistent with law.

## II

We next turn to protestants' claim that such authority as was granted Barton Truck Line, Inc. along the proposed route should not have included additional and unrestricted authority to participate in the movement of classes A and B (dangerous) explosives.

The Commission's report and order of January 29, 1969, which granted Barton permanent general commodity authority in northeastern Nevada included explosives authority. The Commission later found that "several" shippers in the Nevada area had shown a need for the transportation of explosives; that an affirmative showing by protestants that they had provided services to the area was lacking; and that a grant of unrestricted explosives authority was warranted.

Short of a showing of need by "several", the evidence supporting the Commission's grant of explosives authority consists entirely of the sworn but equivocal statements of two explosives users. Alleging that its demand for mining supplies "included explosives", a gold mining operator indicated its need for motor carrier service in general was small but frequent and continuing. What part of this need related to explosives is not specified. The other shipper who mentioned explosives stated that explosives were received "together with all types of ranching materials", and also that development of tungsten ore reserves of approximately three million tons is "contemplated in the near future" and would require shipment of those explosives "necessary to properly conduct a mining operation." Neither user indicated volume, frequency or type of explosives

used, and there was no showing that they had sought to avail themselves of the services of carriers who had pre-existing authority to serve them. Other evidence indicated that in the past the latter carriers were not interested in small shipments but that they are now willing to furnish such services as might be needed.

 The dispositive question is whether the Commission's grant to Barton of unrestricted explosives authority along all points of its new route can be sustained upon the basis of this showing of need by these two users. The explosives grant was made simultaneously with the general commodity grant over the same geographic area, but the Commission report places no reliance on any relationship between the two grants, and instead bases such explosive authority as was granted upon the need shown for a new explosives carrier. Our review here is limited to an appraisal of the agency action solely upon the grounds invoked by the agency. SEC v. Chenery Corp., 332 U.S. 194, 196–197, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947). The inquiry as to those grounds is whether the administrative decision has rational support by substantial evidence on the whole record. Gilbertville Trucking Co., Inc. v. United States, 371 U.S. 115, 126, 83 S.Ct. 217, 9 L.Ed.2d 177 (1962); Universal Camera Corp. v. NLRB, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

With these principles in mind, we conclude that the grant of unrestricted explosives authority cannot be sustained. The need of the two users individually and in sum is small to the extent that any quantity could be found to be suggested. Perhaps there could have been deemed substantial evidence in the record to support an application for service to the two users or for restricted explosives authority of some sort. *See, e. g.,* Alexandria, Barcroft & Washington Transit Co. v. United States, 103 F.Supp. 607, 609 (E.D.Va.1951); C. E. Hall & Sons, Inc. v. United States, 88 F.Supp.

596, 602 (D.Mass.1950). *See also,* W. S. Digby, Inc., Extension-Western States, 110 M.C.C. 684, 691–92 (1969). The need shown, however, is insufficient to sustain the authority granted—explosives authority along the entire route without an interline restriction. Garrett Freightlines, Inc. v. United States, 307 F.Supp. 1245 (D.Idaho 1969), *supra. Cf.* Whitfield Transportation, Inc. v. United States, 254 F.Supp. 852 (D.N.M. 1965). In view of our disposition of this issue, it is unnecessary further to discuss the protestants' claim of right to an oral hearing on the explosives issues.

Accordingly, the Commission's grant of explosives authority to Barton Truck Line, Inc. is set aside, and otherwise its order affirmed in all respects.